IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE GIVING BACK FUND, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:24-cv-3495 |
| ) | |
| HANDLER THAYER, LLP and ) | |
| ANDREW D. MORTON, ) | |
| ) | **JURY DEMAND** |
| Defendants. ) | |

## COMPLAINT

Plaintiff, The Giving Back Fund, Inc. ("GBF"), now files its Complaint against Defendants Handler Thayer, LLP ("Handler Thayer") and Andrew D. Morton ("Morton"), and states as follows:

### NATURE OF CASE

1. GBF is a nonprofit organization providing foundation management services for star athletes, celebrity clientele, corporations and others. On February 9, 2023, after GBF's former counsel, Defendants Handler Thayer and its partner, Andrew Morton, seemingly engaged in a conflict of interest and made unauthorized statements to the press, GBF sent Defendants a letter advising them to cease and desist stating that they represent or are associated with GBF in any way. Infuriated at being fired, the very next day, Morton harassed GBF President Marc Pollick at a 2023 Super Bowl event, and followed up in March 2023 with an email expressly threatening "punishment" of Pollick and GBF:

> Marc, let's please avoid a reference as utterly and offensively comical as mentioning that no good deeds go unpunished when the audience in question provided literally hundreds of hours of loyal and tireless service over the course of the past decade – ***unfortunately for both GBF and you personally, the punishment in return has only just begun.*** So in the event that somehow you were under the

misguided impression I'm one to find himself brazenly thrown under the bus and quietly remain there without *making use of every asset at my disposal* in response, *you are soon to be sorely and severely disappointed.*

(Exhibit A; emphasis added).

2. Unfortunately, Defendants followed through with that threat by, among other things: (1) providing a reporter with internal GBF documents and other information gleaned from their representation of GBF; (2) sending emails to GBF clients advising them to terminate their relationships with GBF; and (3) soliciting current and former clients to move to a competitor of GBF, which competitor Defendants represent. Defendants took those actions with the intent to harm GBF, and they resulted in: (1) a series of "hit pieces" targeting GBF and Pollick by the aforementioned reporter; (2) the loss of reputation and goodwill; and (3) the loss of existing and potential clients. Meanwhile, Handler Thayer has continued to send invoices to GBF for unauthorized "legal services" it allegedly continues to provide GBF clients.

3. GBF now sues Morton and Handler Thayer for: (1) breach of fiduciary duty; (2) tortious interference with prospective economic advantage; and (3) disparagement.

**PARTIES**

4. The Giving Back Fund ("GBF") is an IRS 501(c)(3) nonprofit organization incorporated and headquartered in Massachusetts. GBF strives to encourage and support new philanthropy by offering professional, strategic, and cost-effective foundation management; to help cultivate a new group of philanthropists within the entertainment and sports industries, with a particular emphasis on groups often underrepresented in traditional philanthropy such as people of color, women, and youth; to help establish new philanthropic role models who will inspire others to give back to their communities and create a high-profile, charitable community that works together to solve problems and make the world a better place. Through its Design/Build platform, GBF provides a range of philanthropic consulting and management services, including assistance

in determining how to best accomplish philanthropic goals; guidance in establishing a donor-advised foundation or public charity, fiscal sponsorships and corporate foundations. It offers development of giving strategies and goals; fielding, screening, and responding to charitable inquiries and requests; facilitation and research on causes; event oversight; and coordination of IRS filing and audit management.

5. Defendant Handler Thayer, LLP is a law firm headquartered in Chicago, Illinois, with an additional office in Naples, Florida.

6. Defendant Andrew Morton is a partner at Handler Thayer, LLP; on information and belief, he resides in Maryland. Morton chairs Handler Thayer's Sports and Entertainment Law Group. Morton describes himself on Handler Thayer's website as being attuned to the importance of the public's perception of a nonprofit:

> Andrew's breadth of experience in nonprofit corporate governance enables him to intervene at the eleventh hour to support crises management strategy, and remedy operational issues that may threaten public perception or even an organization's tax-exempt status. Over the past decade, he has successfully obtained numerous retroactive reinstatements of tax-exempt status revocations, public charity reclassifications and waivers of IRS penalties for tax filing deficiencies.

## JURISDICTION AND VENUE

7. Diversity jurisdiction exists under 28 U.S.C. 1332. Personal jurisdiction over Morton exists in Illinois because Morton, a partner in Handler Thayer, had continuous and systematic contacts with the State of Illinois. Moreover, Morton directed Handler Thayer's representation of GBF, which representation included work by Handler Thayer employees in Chicago, and all of Handler Thayer's invoices were prepared and sent by Handler Thayer's headquarters in Chicago.

8. Venue exists pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS COMMON TO ALL COUNTS

9. Defendants served as counsel to GBF for several years, advising it on 501(c)(3) compliance and other issues. Defendants also billed GBF for nonprofit oversight and annual compliance for GBF clients. Morton also served as a director on GBF's Board for a period ending in 2015.

10. In December of 2022 and January of 2023, a GBF client complained to Pollick that it had retained Defendants at Pollick's recommendation and had learned of an alleged conflict of interest involving a rival nonprofit. That client also revealed that Defendants had attempted to persuade it to leave GBF for the Players Philanthropy Fund ("PPF"), a direct competitor of GBF which Defendants represent. PPF's website currently identifies Morton as PPF's "Legal Counsel."

11. In January 2023, after Buffalo Bills safety Damar Hamlin suffered cardiac arrest on national television, people donated over $8 million to Hamlin's "Chasing M's Foundation Community Toy Drive", during which time GBF became its fiscal sponsor. On February 8, 2023, the Arizona Republic ran an article about that foundation, stating, "none of the contributions are tax deductible", citing Andrew Morton, "legal counsel to The Giving Back Fund" as the source. That article also ran in USA Today. Morton's statements to the press calling into question the tax deductibility of the contributions were inaccurate, or at a minimum, misleading, as GBF had formulated a plan to give all donors of $250 or more a protocol for making their contributions deductible. GBF had not authorized Defendants to make any statements to the press about the Hamlin foundation or anything else.

12. On February 9, 2023, GBF sent Morton and Handler Thayer a letter demanding that Morton cease and desist "representing that you are GBF's legal counsel or in any way associated with GBF." On February 10, 2023, Morton encountered Pollick at a Super Bowl event at which

he followed Pollick around the venue and repeatedly complained that he had done nothing wrong and should not have been fired. Pollick declined to engage with Morton, seemingly making Morton more upset.

13. After the express termination of the attorney-client relationship, Defendants took action to harm GBF and benefit themselves. For example, Morton continued to communicate with GBF clients, informing them orally and by email that a negative story would soon be appearing in the press about GBF, and that they should leave GBF. As addressed below, Morton was already involved in choreographing the negative press to come. At least one known recipient of such an email from Morton, Foundation Regeneration, terminated its relationship with GBF, and others later followed.

14. On March 27, 2023, Morton sent Pollick (and others at GBF and Handler Thayer) an email explicitly threatening "punishment" of Pollick and GBF:

> Marc, let's please avoid a reference as utterly and offensively comical as mentioning that no good deeds go unpunished when the audience in question provided literally hundreds of hours of loyal and tireless service over the course of the past decade – ***unfortunately for both GBF and you personally, the punishment in return has only just begun.*** So in the event that somehow you were under the misguided impression I'm one to find himself brazenly thrown under the bus and quietly remain there without ***making use of every asset at my disposal*** in response, ***you are soon to be sorely and severely disappointed.***

(emphasis added). Morton knew what was coming because he was consulting with a reporter in Chicago, Daniel Libit, to run an extremely negative "expose" on Pollick and GBF. Morton's contribution to this effort including providing vigorously disputed "facts" allegedly demonstrating that GBF could not deliver the basic services required of a fiscal sponsor. Morton shared privileged and confidential internal communications with the intent and purpose to harm GBF; he also fed Libit questions to ask a GBF Board member based on information learned through privileged communications.

15. On April 5, 2023, GBF wrote Defendant Handler Thayer's Managing Partner about Morton's conduct, including his explicit threat (Exhibit B), and on April 7, 2023, Handler Thayer vehemently denied that Morton had done anything wrong. In almost taunting fashion, two days later, Morton sent letters to GBF on behalf of GBF clients, And Rise, Inc. and Independent Venue Alliance, Inc., terminating their relationship with GBF in favor of Defendants' client PPF.

16. On May 1, 2023, the publication Sportico published an article by Daniel Libit titled "Damar Hamlin's Charity Sponsor, the Giving Back Fund, Embroiled in Strife." In that article, Libit stated that he relied on "a review of hundreds of pages of internal [GBF] documents", statements by a "whistleblower" employee, statements by Morton about GBF's relationship with Damar Hamlin, and emails about that relationship.

17. The May 1, 2023 article contained numerous false statements about Pollick and GBF, and misleadingly portrayed GBF as a chaotic organization in strife, and worse: GBF was "an organization struggling to carry out basic oversight and accounting functions and steeped in fear of its leader." After the article ran, GBF sent Sportico an inventory of the false and misleading statements (a redacted version is attached as Exhibit C). As one example, there was no "resignation of multiple board members." One board member "resigned" only after she was asked multiple times to leave for cause. One other board member stepped down for health and family reasons after serving a full term, and a third had resigned many months earlier because she lost her job and was just never taken down from the website at that time.

18. The article also ran a nearly verbatim account of the aforementioned disgruntled employee's internal letter to the GBF Board, giving play to each and every allegation. Feigning objectivity, Libit followed each allegation with "GBF says this is unfounded."

19. After publication of that article, GBF retained outside counsel to investigate the allegations in the letter from the "whistleblower" employee. That investigation resulted in a finding that the allegations were "false, baseless and meritless," and "there is no substantiation to the allegations raised by [the employee] against the President. As such there is no recommendation being made for disciplinary action against the President. Removal of the President from his position is not warranted or any other similar actions."

20. Sportico and Libit learned of the investigation and its conclusion and on July 11, 2023, they published an article titled, "Giving Back Fund Investigates CEO, Fires Whistleblower." That article also contained numerous false and misleading statements which GBF also identified in correspondence to Sportico. (Exhibit C). That article also reprised its prior finding that GBF was unable to deliver the basic services required for its foundation work: "GBF has long struggled to carry out the basic functions of a fiscal sponsor." On information and belief, Morton was also an unidentified source for that article, which again cited internal GBF documents.

21. Defendants' actions to punish GBF have succeeded. As addressed above, several clients already have left GBF. Additionally, several potential clients which had expressed interest in working with GBF have since declined to proceed.

22. Meanwhile, Defendants have continued to send GBF invoices for unauthorized legal work purportedly done on behalf of GBF clients.

## COUNT I
## BREACH OF FIDUCIARY DUTY

23. GBF incorporates paragraphs 1-22 as if fully set forth herein.

24. Even after the termination of the attorney-client relationship, Defendants owed GBF continuing fiduciary duties, including the duty of loyalty and to maintain client confidences. After their termination, Defendants were prohibited from using information gleaned from the

representation to the disadvantage of GBF. Defendants breached those duties by, among other things:

    (a)    disclosing information relating to their representation of GBF, including internal GBF documents, for the very purpose of harming GBF;

    (b)    disparaging GBF to journalists, current clients and potential clients;

    (c)    threatening GBF with "punishment";

    (d)    advising GBF clients to not pay invoices owed GBF; and

    (e)    encouraging GBF clients to leave GBF for a GBF competitor represented by Defendants.

25.    GBF has been damaged by such conduct in an amount to be determined at trial, but in any event, greater than $75,000, the jurisdictional minimum.

26.    Defendants' actions were willful and malicious.

## COUNT II
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

27.    GBF incorporates paragraphs 1-26 as if fully set forth herein.

28.    In breach of their duties to GBF, Defendants have advised GBF clients to: (1) not pay invoices owing GBF; (2) terminate their relationship with GBF; and (3) leave GBF for a competitor represented by Defendants. In addition, Defendants encouraged and assisted the publication of the aforementioned articles as part of their effort to cause existing clients to leave GBF and potential clients to shun GBF.

29.    As a result of Defendants' actions, GBF has lost existing clients; it also has lost potential clients which had expressed interest in retaining GBF.

30.    GBF has been damaged by such conduct in an amount to be determined at trial, but in any event, greater than $75,000, the jurisdictional minimum.

31. Defendants' actions were willful and malicious.

## COUNT III
## DISPARAGEMENT

32. GBF incorporates paragraphs 1-31 as if fully set forth herein.

33. Defendants made false or misleading statements to reporters and GBF clients about the quality of GBF's services to influence existing and potential clients to shun GBF.

34. As a result of those statements, GBF has lost clients. Those statements have also influenced potential clients which had been interested in retaining GBF prior to the statements.

35. GBF has been damaged by such conduct in an amount to be determined at trial, but in any event, greater than $75,000, the jurisdictional minimum.

36. Defendants' actions were willful and malicious.

**WHEREFORE,** Plaintiff, The Giving Back Fund, Inc. seeks entry of judgment against Defendants Handler Thayer, LLP and Andrew D. Morton on Counts I, II and III for (1) compensatory damages in an amount to be determined at trial; (2) punitive damages in an amount to be determined at trial and (3) all costs of suit.

### JURY DEMAND

Plaintiff requests a trial by jury.

*/s/ Paul K. Vickrey*
Paul K. Vickrey (vickrey@vvnlaw.com)
Patrick F. Solon (solon@vvnlaw.com)
Dylan M. Brown (dbrown@vvnlaw.com)
VITALE, VICKREY, NIRO, SOLON & GASEY LLP
311 S. Wacker Dr., Suite 2470
Chicago, IL 60606
(312) 236-0733
Fax: (312) 236-3137

*Attorneys for Plaintiff,*
*The Giving Back Fund*